UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE BRADLEY, on behalf of herself and those similarly situated, | ) ) ) 19 C 4301 ) ) Judge Gary Feinerman ) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| WOLF RETAIL SOLUTIONS I, INC., WOLF RETAIL SOLUTIONS, LLC, and THOMAS ROBINSON, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Michelle Bradley alleges in this putative class and collective action that Wolf Retail Solutions and its president violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, by not paying her for overtime work. Doc. 1. Defendants move under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel mediation and arbitration and to stay or dismiss this suit. Doc. 15. The motion is denied.

**Background**

On a motion to compel arbitration, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [her] favor." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (internal quotation marks omitted).

Bradley is employed by Defendants. Doc. 1 at ¶¶ 6, 10. Defendants have an employee handbook ("Handbook"). Doc. 16 at 2; Doc. 19-1. Bradley signed the Handbook digitally by clicking a box next to this statement: "I have read, understood and accept the terms and conditions stated in this handbook." Doc. 20 at 3.

1

The Handbook's dispute resolution provision states:

> ***Dispute Resolution***
>
> …
>
> All employees of the Company agree to first seek to mediate any dispute with the Company with a mediator from the American Arbitration Association or similar organization trained and experienced in employment disputes. If mediation is not successful, both the Company and the employee agree to submit their dispute to arbitration.

Doc. 19-1 at 30 (footnote omitted). The Handbook's signature page states:

> ***Acknowledgement of Receipt of Wolf Retail Solutions 1, Inc. Employee Handbook***
>
> I acknowledge that I have received a copy of the Wolf Retail Solutions 1, Inc. Employee Handbook ("Handbook"). I understand that I am responsible for reading and abiding by all policies and procedures in this Handbook, as well as other policies and procedures of the Company.
>
> I also understand that the purpose of this Handbook is to inform me of the Company's policies and procedures, and it is not a contract of employment. *Nothing in this Handbook provides any entitlement to me or to any Company employee, nor is it intended to create contractual obligations of any kind*. I understand that the Company has the right to change any provision of this Handbook at any time and that I will be bound by any such changes.

*Id*. at 2 (emphasis added). The Handbook elsewhere states, on two separate pages: "**This Employee Handbook is not a contract.**" *Id*. at 5, 6.

## Discussion

Section 2 of the FAA states, in relevant part:

> A written provision in any … *contract* evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 2 "mandates enforcement of valid, written arbitration agreements," *Tinder*, 305 F.3d at 733, and "embodies both a liberal federal policy favoring

arbitration and the fundamental principle that arbitration is a matter of contract," *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). Because, as reflected in the emphasized portion of the above-quoted statutory text, "arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ibid*. (internal quotation marks omitted). In determining "[w]hether a binding arbitration agreement exists," the court must apply "principles of state contract law." *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts.").

Given these principles, Defendants may rely on the Handbook's dispute resolution provision only if the Handbook is a contract. *See Gore*, 666 F.3d at 1032. And because "state-law [contract] principles" govern "whether the parties [have] agreed to arbitrate," *First Options of Chi., Inc.*, 514 U.S. at 944, Illinois law governs whether the Handbook is, in fact, a contract.

Under Illinois law, "an employee handbook … creates enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987); *see also Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) ("Illinois law … recognizes that employment handbooks have the potential to form contracts between employers and workers"); *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) (same); *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) (same). Those traditional requirements are as follows:

> First, the language of the [handbook] must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the [handbook] must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to

3

> be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the [handbook].

*Border*, 75 F.3d at 273 (citing *Duldulao*, 505 N.E.2d at 318); *see also Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (same).

Defendants' submission that the Handbook creates contractual obligations fails at the first step—which requires that it "contain a promise clear enough that [Bradley] would reasonably believe that an offer has been made," *Border*, 75 F.3d at 273—because it states in no uncertain terms that "it is not a contract of employment," Doc. 19-1 at 2, that "[n]othing in this Handbook … is … intended to create contractual obligations of any kind," *ibid.*, and twice, in bold, that "[t]his Employee Handbook is not a contract," *id.* at 5, 6. It is axiomatic that a document stating that it is not a contract and that it creates no contractual obligations of any kind is not a contract that creates a contractual obligation to engage in arbitration. *See Workman v. UPS, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) ("[T]he plaintiff's contractual claim is extinguished by the statement in the handbook that 'this Policy Book is not a contract of employment and does not affect your rights as an employee of [defendant].' Such a disclaimer, if clear and forthright … is a complete defense to a suit for breach of contract based on an employee handbook.") (citation omitted); *Doe v. First Nat'l Bank of Chi.*, 865 F.2d 864, 873 (7th Cir. 1989) ("We fail to see how a document which clearly disclaims in unambiguous language any purpose to bind the parties can constitute 'a promise clear enough that an employee would reasonably believe that an offer has been made.'") (quoting *Duldulao*, 505 N.E.2d at 318); *Pankow v. WestAmerica Mortg. Co.*, 740 F. Supp. 1309, 1313 (N.D. Ill. May 8, 1990) ("As long as the handbook contains a conspicuous provision announcing that it does not constitute an offer or the terms of a contract, no contract will form."); *cf. Duldulao*, 505 N.E.2d at 319 (finding a contractual relationship because "the handbook contain[ed] no disclaimers to negate the promises made").

4

Defendants incorrectly argue that *Moreno v. Progistics Distribution, Incorporated*, 2018 WL 3659348 (N.D. Ill. Aug. 2, 2018), requires the opposite result. *Moreno* bears a superficial resemblance to this case in that it involved an employee handbook containing both an arbitration provision and a disclaimer stating that the handbook did not create "a binding contract between the Company and its employees." *Id*. at *2. Unlike Bradley, however, the plaintiff in *Moreno* signed an acknowledgment, separate from the handbook, which "unequivocally stat[ed]: 'I … *agree that I am bound* by the provisions of the Handbook, particularly the provision relating to the *mandatory, binding arbitration* of any employment related dispute. I understand that by *agreeing to arbitration*, I am *waiving the right to a trial by jury* of the matters covered by the [arbitration provision].'" *Id*. at *4. It is due primarily to that circumstance that *Moreno* held there to be an offer that then gave rise to a binding contract requiring arbitration. Here, by contrast, Bradley clicked on an acknowledgement stating, "I have read, understood and accept the terms and conditions stated in this handbook," Doc. 20 at 3, and among those terms and conditions were several explicit provisos that the Handbook was not a contract and created no contractual obligations of any kind.

## Conclusion

For the foregoing reasons, Defendants' motion to compel mediation and arbitration is denied.

November 26, 2019

_____
United States District Judge

5